Argued at Pendleton May 3; affirmed July 8; rehearing denied September 20, 1932

## STATE *v.* STRINGER

(13 P. (2d) 340)

*Howard T. McCulloch,* of Portland (Frank C. Mc-Colloch and Joseph J. Heilner, both of Baker, on the brief), for appellant.

*Leland S. Finch,* District Attorney, and *A. S. Grant,* both of Baker (Carl Helm, District Attorney for Union County, of La Grande, and Allen A. Smith, of Baker, on the brief), for the State.

KELLY, J. A portion of section 11, township 14 south, range 44 east Willamette Meridian, in Baker county, Oregon, is the arena in which the principal events of this case transpired. For the purposes of clarity, we here insert a draft of the premises involved. The squares indicate forty-acre tracts.

In the vicinity of the southeast quarter of the northwest quarter of that section, the defendant and his associates in business were operating a sheep shearing camp. A public highway running between Huntington and Baker, Oregon, known as the Old Oregon Trail, enters the forty-acre tract consisting of the northeast

quarter of the southeast quarter of said section at a point approximately midway between the northeast and the southeast corners of said forty-acre tract; continues in a general northwesterly course to a point on the northern boundary line of said last named forty-acre tract approximately 187½ feet from the western boundary line thereof; runs thence in a northerly and northeasterly direction, and thence northwesterly and westerly to Baker. By oral lease, the owners of the premises between the Old Oregon Trail and the western boundary line of said forty-acre tract leased said premises to the Stanfield Feeder Company, a corporation, of which R. N. Stanfield, the prosecuting witness, was a stockholder and officer.

Through these premises, starting at said Old Oregon Trail and passing over the government land abutting on the west, there was a roadway to defendant's sheep shearing plant. At a point about 300 feet westerly from said Old Oregon Trail, a discontinued county road intersected said private roadway. In making said lease of said premises to the prosecuting witness, the use of this private roadway was not reserved either for the lessor or for the defendant. There was a gate across said private roadway approximately 230 feet northwesterly from the center of said section, and another gate at the intersection of said private roadway with said Old Oregon Trail.

On or about April 21, 1931, the prosecuting witness fastened said first mentioned gate by wiring the same shut and posted thereon a no trespass sign.

As to the gate across said private highway at the Old Oregon Trail, the prosecuting witness claims to have taken it out and placed four strands of wire across the opening, thereby making a new panel of

fence there, and to have posted a no trespass sign there. The defendant testified that on the 21st of April, 1931, on said trip from his shearing camp, a boy opened the gate for the defendant and, after the defendant had passed through, the boy closed it leaving the trespass sign intact. The prosecuting witness claims that the new panel, which he says he made, was cut and that on the following day, April 22, 1931, he went to the place to repair said new panel of fence.

In any event, on April 22, 1931, the prosecuting witness, with an assistant, went to the place where the last named gate had been and very shortly thereafter the defendant drove up in a Ford automobile, took some pliers and cut the wires of the panel just south of the one the prosecuting witness had made. Some compliments were exchanged between the defendant and the prosecuting witness. The defendant picked up a rock. The prosecuting witness picked up two. After more compliments, the defendant threw his rock down. The testimony is conflicting as to whether the prosecuting witness threw both his rocks down. Some witnesses testified that he did. One witness testified that he placed one rock on the fence post nearest him. The defendant testified that the prosecuting witness held a rock in his hand as if he intended to throw it until defendant's automobile struck the prosecuting witness, and that such rock was thereafter found between the fender and the hood of defendant's car. As a gesture of protest against defendant's entry through it, the prosecuting witness stood in the opening in the fence caused by the cutting of the wires by defendant. The defendant got into his automobile and drove it through said opening, striking the prosecuting witness with said car and injuring him. Neither a license to use said private roadway nor an

express grant of a right of way or easement thereover was shown by defendant. One witness testified that the portion of the private roadway between the old discontinued county road and the sheep shearing camp had been used as such since 1920; and that the private roadway from the old discontinued county road and the highway, known as the Old Oregon Trail, had been in use seven or eight years. There is no testimony tending to show user of the roadway from the old county road to the Old Oregon Trail by defendant, or his predecessors in interest, for a period long enough to create a prescriptive right thereto. After the lease to the prosecuting witness was made, as above stated, the agent, who was also the husband, of the lessor, sent word to defendant that they (the lessor and her husband) had no objection to defendant making use of said roadway, but this could not have the effect of giving defendant any right of entry.

■ The first assignment of error is based upon an instruction to the effect that there was some evidence received on the cross-examination of the defendant with respect to the previous conviction of the defendant of a crime. The defendant testified that another person had paid a fine for him and that he could not say whether he had been convicted or not. In the criticised instruction the trial judge restricted the purpose of this testimony to the effect it might have upon the credibility of defendant and also stated:

"The proof of the conviction of a crime at some former time does not tend in any way to prove the crime with which the defendant is charged in this case."

It would have been more accurate to have spoken of defendant's *alleged* previous conviction, but, at most, the giving of this instruction was harmless error.

■ The second assignment of error questions the correctness of the following definition of an assault:

''An assault is an intentional attempt by one person to do an injury to the person of another coupled with the present ability to carry that intention into effect.''

Defendant calls attention to the omission therefrom of the phrase, ''by force or violence,'' and urges that this omission constitutes error. As applied to the facts in this case, that omission was harmless. No one suggested that the injury sustained by the prosecuting witness had not been inflicted by force or violence.

The defendant testified that he was driving at a speed of eight miles an hour. Other witnesses testified to a much greater speed. No one could have the hardihood to think that driving an automobile at a speed of eight miles or more an hour against the person of another does not involve force and violence.

■ The third assignment predicates error upon the failure of the court to give defendant's requested instruction number three, which is as follows:

''The defendant is charged in this case with assault, being armed with a dangerous weapon, which weapon is named in the indictment as an automobile. I instruct you that, as a matter of law, an automobile is not a dangerous weapon, and you must not infer or presume that, merely because an automobile being driven by the defendant at the time mentioned in the indictment came into contact with the person of R. N. Stanfield, that such result was intended by the defendant; but before you can find the defendant guilty of the crime charged, you must first determine from the evidence, beyond a reasonable doubt, that the defendant drove the automobile with the specific, wilful, unlawful, felonious and purposeful intention and design to inflict bodily harm upon the person of R. N. Stanfield with said automobile, and that, as so intentionally used

and driven by defendant, the automobile was capable of and intended by the defendant to produce death or great bodily harm.''

The second sentence in the above quoted instruction contains the statement, ''that as a matter of law, an automobile is not a dangerous weapon.'' That statement is seriously misleading.

The able and learned trial judge instructed the jury that—

''In order to find the defendant guilty as charged you must find that he was armed with a dangerous weapon, and by that is meant such a weapon as, when used by the defendant, is capable of inflicting serious bodily injury on another. Now the question of whether the automobile in this case, in the circumstances under which it was used, and in the manner in which it was used, was or was not a dangerous weapon, is a question to be determined by you and you alone, from the evidence in this case.''

No error was committed by failing to give defendant's requested instruction number three.

Assignments numbered four and five urge that the court erred in failing to give defendant's requested instructions numbered four and seven and are based upon the supposition that defendant could justify striking the prosecuting witness with defendant's automobile on the ground that defendant was using reasonable force in the use and enjoyment of his lands, or was ejecting a trespasser therefrom, preventing a trespass thereon, or defending his possession thereof from attack. The record does not disclose that defendant had any right of entry upon the private roadway in question at the place where the altercation occurred.

■ The sixth assignment of error is based upon the failure of the trial court to give defendant's requested

instruction numbered ten which is to the effect that one in the pursuit of his lawful business, and being where he has a right to be, is not obliged to retreat by reason of the threats or demands of another. The vice of defendant's position in regard to the fourth, fifth and sixth assignments lies in the fact that the defendant testified that he had no intention of hitting the prosecuting witness with anything. He was asked:

"Q. Mr. Stringer, state whether or not at any time when you were driving through that panel on your way up to the shearing plant or at any time on the afternoon of April 22, you had any intention, or as you drove and operated your automobile, you had any intention of striking or coming in contact with Mr. Stanfield or running into him with that automobile?

"A. It never entered my mind, I had no intention of hitting him with anything.

"Q. What were you intending to do, what were you about?

"A. My intentions were only to get through that fence and go on to my business where I had to be, and get away from having any trouble with him.

"Q. That was your only intention?

"A. Those were my only intentions."

This is entirely inconsistent with any theory of the use of force in defense of property or self-defense, and rendered inapplicable defendant's instructions numbered four, seven and ten.

Defendant cites the case of *Brown v. Kemp,* 46 Or. 517 (81 P. 236). This is a case where the Dundee Mortgage & Trust Investment Company, being the owner of 620 acres of land, sold 160 acres from the west end thereof to one Williams, and, a short time thereafter, said company sold 140 acres adjoining the Williams' tract to one Kemp. There was but one public highway

touching the land. There was no express grant of a right of way to Williams through the remaining land of the mortgage company, but there was a reservation in favor of Williams of a right of way for him over the land sold to Kemp and a stipulation, that in all future sales by the company a right of way would be reserved over the land then owned by it for the use of the owners of the tracts previously sold. Plaintiff, Brown, purchased the remainder of the tract from the mortgage company and received a warranty deed without reservation of said right of way. The court applied the rule of law that, "if one conveys to another, out of a parcel of land, a part lying neither on the highway nor on the grantee's other land, it will be useless to the new owner, unless he can have access to it; hence, by presumption of law, the deed carries with it to the grantee a right of way over the unconveyed part." The court also held that the open and visible roadway in use by Williams and Kemp at the time of plaintiff's purchase constituted notice to plaintiff of the existence of the easement..

In the case at bar, the defendant was the grantee in a deed from Theresa Chadwick and Thurston E. Chadwick, her husband, of premises separated from the premises east of the discontinued county road aforesaid by almost an entire forty-acre tract of government land. It is stipulated that, at the time of the altercation involved herein, Mrs. Lucinda J. South was the owner in fee simple of the northeast quarter of the southeast quarter and the southeast quarter of the northeast quarter of said section eleven. There is nothing in the record indicating any grant of any kind from Mrs. South to defendant or to his predecessors in interest; and, certainly, a mere license to use the roadway in

question was subject to revocation at any time. For this reason, the doctrine of the case of *Brown v. Kemp,* supra, is not applicable to the instant case.

The notice imputable to the prosecuting witness at the time he leased the premises in question, because of the existence of the private roadway in question, was simply notice of such easement, if any, as actually existed. None being shown, certainly, the prosecuting witness' leasehold estate was subject to none.

It is suggested that, because Mr. Chadwick testified to an alleged statement by Mr. South, the husband of the owner of said premises as aforesaid, that he, South, did not think there would be any trouble over the road at all when he leased the property and to go ahead and use the road, the record sustains defendant's claim to a license to use the private roadway or easement of roadway over the premises theretofore leased by the prosecuting witness. We think not. At the time the statement is alleged to have been made, neither Mr. South nor his wife had any right to grant a right of way to defendant over the premises leased to the prosecuting witness without the consent of said prosecuting witness. Moreover, there is no testimony by Mr. South, although called as witness by the defendant, that he made the purported statement.

No reversible error appearing, the judgment of the circuit court is affirmed.

BELT, J., not sitting.